UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

JEREMIAH J. DENSLOW,
Administrator, et al.,

              Plaintiffs,

-v-

CITY OF DAYTON, et al.,

              Defendants.

Case No. C-3-06-043

Judge Thomas M. Rose

_____

ENTRY AND ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT (Doc. #10) AND TERMINATING THE CASE

_____

This matter arises from the shooting death of Kenneth Fields ("Fields"). The Plaintiffs are Jeremiah Denslow, the Administrator of Fields's estate and Della Francis Fields, Fields' mother and next of kin. The Defendants are the City of Dayton and Dayton Police Officers Eric Sheldon ("Officer Sheldon") and Gordon Cairns ("Cairns"). Three John Does and one Jane Doe are also named as defendants but they have yet to be identified.

Now before the Court is the Defendants' Motion for Summary Judgment. (Doc. #10.) The time has run and the Plaintiffs have not responded to this Motion. Also, the Plaintiffs have not identified lay or expert witnesses and, according to the Defendants, have not engaged in any discovery, the deadline for which is passed. The Defendants have filed a reply and the Motion is now ripe for decision.

Plaintiffs filed their Complaint in the Common Pleas Court of Montgomery County, Ohio. The Complaint is for wrongful death, loss of consortium and violation of civil rights. It was subsequently removed to this Court based upon this Court having federal question

jurisdiction. (Doc. #1.) A brief factual background will first be set forth followed by the standard of review and an analysis of the Motion for Summary Judgment.

## FACTUAL BACKGROUND

At 2:23 a.m. on January 15, 2004, Fields dialed 911 and stated the following: "Yeah, I done killed everyone in my house. I'll be out behind, behind my house at 178 West Fairview Avenue." (Affidavit of Eric Sheldon ("Sheldon Aff.") ¶ 2 6/7/07; Affidavit of Gordon Cairns ("Cairns Aff.") ¶ 2 6/7/07.) Officers Sheldon and Cairns were dispatched to the call. (Id.)

Officers Sheldon and Cairns arrived at the residence at approximately 2:27 a.m. (Sheldon Aff. ¶ 3; Cairns Aff. ¶ 3.) The officers then proceeded on foot to the backyard of the home with Officer Cairns approaching the east side of the residence and Officer Sheldon approaching the west side of the residence. (Sheldon Aff. ¶ 4; Cairns Aff. ¶ 4.)

Officer Cairns stopped at the southeast corner of the residence and observed a while male subject stepping off the back porch into the yard. (Cairns Aff. ¶ 4.) Cairns immediately radioed this information to Officer Sheldon. (Id.)

As Officer Sheldon entered the backyard from the west side of the house, Fields, who was standing in the middle of the yard, turned to face him. (Sheldon Aff. ¶¶ 4, 5.) Sheldon repeatedly ordered Fields to "show me your hands." (Id. ¶ 6.) Sheldon could see that Fields was armed with a large, stainless steel, fixed blade knife with a black handle. (Sheldon Aff. ¶ 6, Cairns Aff. ¶ 5.) The knife was partially concealed in Fields's right hand. (Id.) The knife was placed against Fields's forearm, pointed up. (Id.)

Fields looked at Officer Sheldon and asked, "do you want to go home tonight?" (Sheldon Aff. ¶ 7.) Officer Sheldon immediately notified dispatch that Fields was armed with a knife and

requested additional crews. (Id.) At this time, Officer Cairns entered Officer Sheldon's line of sight as Officer Sheldon approached from the east side of the residence. (Id.)

When Officer Cairns entered the backyard, Fields was facing Officer Sheldon. (Cairns Aff. ¶ 5.) Officer Cairns then ordered Fields to drop the knife. (Id. ¶ 6.) Instead of complying with Officer Cairns's commands, Fields turned toward Officer Cairns and began taking small steps slowly toward him. (Sheldon Aff. ¶ 9; Cairns Aff. ¶ 8.) Fields was within fifteen feet of Officer Sheldon and within ten feet of Officer Cairns. (Sheldon Aff. 8; Cairns Aff. ¶ 7.) Officer Cairns was in a position where he could not back up because backing up would cause him to loose sight of both Fields and Officer Sheldon. (Sheldon Aff. ¶ 9; Cairns Aff. ¶ 8.)

Officer Cairns repeatedly commanded Fields to stop moving and drop the knife. (Cairns Aff. ¶ 8.) Fields did not comply and continued taking small steps toward Officer Cairns. (Sheldon Aff. ¶ 9.)

When Fields came within eight feet of Officer Cairns, Officer Cairns told him not to take another step. (Cairns Aff. ¶ 8.) Fields immediately raised both of this hands and took another step toward Officer Cairns. (Cairns Aff. ¶ 8.)

Believing that Fields was preparing to attack him, Officer Cairns fired multiple rounds at Fields. (Cairns Aff. ¶ 9.) Almost simultaneously, Officer Sheldon fired multiple rounds at Fields. (Sheldon Aff. ¶ 10.) Fields fell to the ground. (Cairns Aff. ¶ 10.) Officers Sheldon and Cairns then secured Fields and called for a medic. (Id.) The analysis next turns to the standard of review for motions for summary judgment.

## STANDARD OF REVIEW

The standard of review applicable to motions for summary judgment is established by

-3-

Federal Rule of Civil Procedure 56 and the associated caselaw. Rule 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

Alternatively, summary judgment is denied "[i]f there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). Thus, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving

-4-

party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324.

In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party. *Anderson*, 477 U.S. at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe by determining which parties' affiants are more credible. 10A Wright & Miller, *Federal Practice and Procedure*, §2726. Rather, credibility determinations must be left to the fact-finder. *Id.*

However, the mere existence of a scintilla of evidence in support of the nonmoving party is not sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 252. "There must be evidence on which the jury could reasonably find for the plaintiff." *Id.* The inquiry, then, is whether reasonable jurors could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. *Id.*

Finally, in ruling on a motion for summary judgment, "[a] district court is not …obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990). Thus, in determining whether a genuine issue of material fact exists on a particular issue, the court is entitled to rely upon the Rule 56 evidence specifically called to its attention by the parties. The Rule 56 evidence includes the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted. Fed. R. Civ. P. 56(c). The analysis next turns to the Defendants' Motion.

**MOTION FOR SUMMARY JUDGMENT**

The Defendants seek summary judgment on all of Plaintiffs' claims and the Plaintiffs have not responded. Each of the arguments made in Defendants' Motion will be addressed seriatim.

<u>Civil Rights Claims Against the Individual Defendants</u>

The Defendants first argue that Officers Sheldon and Cairns are entitled to qualified immunity for Plaintiffs' allegation that Fields's constitutional rights were violated. "Under the doctrine of qualified immunity, government officials performing discretionary functions will not incur liability for civil damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hinchman v. Moore*, 312 F.3d 198, 205 (6th Cir. 2002)(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Said another way, State officials are shielded from civil damages by the doctrine of qualified immunity "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Mills v. City of Barbourville*, 389 F.3d 568, 574 (6th Cir. 2004) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)).

The Supreme Court has established a two-pronged test for evaluating whether an official is entitled to qualified immunity. *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006). First, taken in the light most favorable to the party asserting the injury, do the facts alleged show that the official's conduct violated a constitutional right? *Id.* (citing *Saucier v. Katz*, 533 U.S. 194 (2001). The second prong is a determination of whether the right is clearly established. *Id.* The relevant inquiry in determining whether the right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Id.*

For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Shamaeizadeh v. Cunigan*, 338 F.3d 535, 546 (6th Cir. 2003), *cert denied*, 541 U.S. 1041 (2004) *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "In other words, the unlawfulness must be apparent under preexisting law." *Id.* "The unlawfulness may be apparent in light of 'direct holdings, from specific examples described as prohibited, or from the general reasoning that a court employs.'" *Id.* (quoting *Feathers v Aey*, 319 F.3d 843, 848 (6th Cir. 2003)). Further, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Id.* (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

Claims of qualified immunity, then, are analyzed on a fact-specific, case-by-case basis to determine whether a reasonable official in the defendant's position could have believed that his conduct was lawful, judged from the perspective of the reasonable official on the scene." *Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000). The test is whether the law was clear in relation to the specific facts confronting the official when he acted. *Guercio v. Brody*, 911 F.2d 1179 (6th Cir. 1990), *cert. denied*, 500 U.S. 904 (1991).

"The defendant bears the initial burden of coming forward with facts to suggest that he acted within the scope of his discretionary authority during the incident in question." *Anderson,* 483 U.S. at 640. The burden then shifts to the plaintiff "to establish that the defendant's conduct violated a right so clearly established that any official in his position would have clearly understood that he was under an affirmative duty to refrain from such conduct." *Id.* "The ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity." *Id.*

"If the undisputed facts show that the defendant's conduct, as a matter of law, did not violate clearly established legal rights, then the district court must grant the defendant summary judgment on the basis of qualified immunity." *Poe v. Hayden*, 853 F.2d 418, 425 (6th Cir. 1988), *cert. denied*, 488 U.S. 1007 (1989). "On the other hand, summary judgment would not be appropriate if there is a factual dispute… involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights." *Id*.

In this case, Officers Sheldon and Cairns were government officials who were performing a discretionary function. The Supreme Court's two-pronged test for qualified immunity will, therefore, be applied.

To consider a claim for excessive force, as is the issue here, a court must analyze the force used by the officer in light of the "objective reasonableness" standard under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386 (1989). The reasonableness of a particular use of force is judged from the perspective of a reasonable officer on the scene and must allow for the fact that police officers are often forced to make split-second judgments in tense and uncertain circumstances. *Id.* at 396-97. Finally, the court looks only to the conduct of the officer without regard to the officer's underlying intent or motivation. *Id.*

In this case, the Officers used deadly force. The United States Supreme Court has held that deadly force may be used "where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officers or others." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985).

In this case, there is Rule 56 evidence that Officers Sheldon and Cairns both knew that

-8-

they were investigating a dangerous call where a man claimed to have "done killed everyone in my house." The Officers also knew that the man would be waiting for their arrival out behind his house at 178 West Fairview Avenue.

The Officers arrived shortly after the call and observed a man stepping off the back porch into the yard at 178 West Fairview. As Officer Sheldon entered the backyard, the man, who turned out to be Fields, turned to face him. Officer Sheldon could see that Fields was armed with a large, fixed-blade knife with a black handle.

Officer Sheldon repeatedly ordered Fields to "show me your hands." Fields refused and asked Officer Sheldon, "do you want to go home tonight?"

Upon entering the backyard, Officer Cairns could see that Fields was facing Sheldon and was holding a very large, fixed-blade knife. Officer Cairns ordered Fields to drop the knife. However, instead of complying with Officer Cairns's commands, Fields turned toward Officer Cairns and began taking small steps toward him.

Officer Cairns repeatedly ordered Fields to stop moving and drop the knife. Fields did not comply. Officer Cairns maintained his position as backing up would cause him to lose sight of both Fields and Officer Sheldon.

When Fields came within about eight feet of Officer Cairns, Officer Cairns told him not to take another step. Fields immediately raised both of his hands and took one large step towards Cairns. Believing that Fields was preparing to attack him, Officer Cairns fired multiple rounds at Fields. Almost simultaneously, Officer Sheldon also fired multiple rounds at Fields.

While the results of this encounter are tragic, the actions of Officers Sheldon and Cairns were objectively reasonable. Fields ignored repeated orders to stop and drop his weapon and

continued to advance toward Officer Cairns armed with a large, fixed-blade knife. Despite being

threatened, Officer Cairns did not discharge his weapon until Fields was within striking distance.

Also, based upon the 911 call and the circumstances they faced in the backyard, Officers

Sheldon and Cairns had probable cause to believe that Fields posed a threat of serious physical

harm to them.

     The Defendants have set forth evidence which they believe demonstrates that Officers

Sheldon and Cairns did not violate Fields's Fourth Amendment rights. The Plaintiffs have set

forth no facts to the contrary. Therefore, the first prong of the test is not satisfied and Officers

Sheldon and Cairns are entitled to qualified immunity from Fields's civil rights claims.

<u>Civil Rights Claims Against the City of Dayton</u>

     The Defendants argue that the City of Dayton is not liable for the Officers' alleged

constitutional violations and that the City of Dayton is entitled to judgment as a matter of law on

Plaintiffs' failure-to-train theory. As above, the Plaintiffs have offered no response.

     A municipality, such as the City of Dayton, cannot be held liable under Section 1983 on a

theory of *respondeat superior* for an injury inflicted solely by its employees. *Monell v.

Department of Social Services of City of New York*, 436 U.S. 658, 694 (1978). To hold a

municipality liable under Section 1983, a plaintiff must prove that a municipal employee caused

a constitutional violation and that a municipal custom or policy was the "moving force" behind

the alleged constitutional violation. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986);

*Polk County v. Dodson*, 454 U.S. 312, 326 (1981). To be successful, the plaintiff must "identify

the policy, connect the policy to the city itself and show that the particular injury was incurred

because of the execution of that policy." *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir.

-10-

1987).

In this case, the City of Dayton has a specific policy involving the use of force and all City of Dayton police officers are trained regarding the necessary use of force in the field. (Affidavit of Chief Julian K. Davis ("Davis Aff.") ¶¶ 2, 3 5/30/07.) Further, the Plaintiffs have not identified a facially unconstitutional official policy nor have they shown that the particular injury complained of was incurred because of the execution of the City of Dayton's policy on the use of force or because of any other policy. In addition to not identifying a facially unconstitutional policy, the Plaintiffs also have not shown that the City of Dayton officially sanctioned or ordered the conduct in question.

In addition to showing the liability of a municipality due to an unconstitutional policy, a plaintiff may establish liability on a failure-to-train theory. *Brown v. Muhlenberg Township*, 269 F.3d 205, 215 (3d Cir. 2001), *reh'g en banc denied*, 273 F.3d 390 (3d Cir. 2001). On a failure-to-train theory, the plaintiff must establish that "the training program is inadequate to the tasks that the officers must perform; that the inadequacy is the result of the city's deliberate indifference; and that the inadequacy is 'closely related to' or 'actually caused' the plaintiff's injury. *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994) (quoting *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989)), *cert. denied*, 513 U.S. 1111 (1995).

In this case, Officers Sheldon and Cairns indicate that they graduated from the Dayton Police Academy which includes the completion of the training required by the Dayton Police Department and the State of Ohio and which includes firearms, use of force and edged weapons training. (Sheldon Aff. ¶ 12; Cairns Aff. ¶ 11.)  Also, both Officers indicate that, in 2003, they completed forty hours of in service training required for sworn personnel including firearms

-11-

qualifications. (Sheldon Aff. ¶ 13; Cairns Aff. ¶ 12.) In response, the Plaintiffs have presented no evidence that the training program is inadequate to the tasks that the officers must perform or that the City of Dayton is deliberately indifferent to a police officer's use of force.

The Dayton Police Department Internal Affairs Bureau conducted a full internal affairs investigation into Plaintiffs' allegations against Officers Sheldon and Cairns. (Davis Aff. ¶ 8.) This investigation included interviews of Plaintiff Della Frances Fields and Officers Sheldon and Cairns. (Id.) After investigating, the Internal Affairs Bureau recommended that there was no evidence of any misconduct on the part of either Officer Sheldon or Officer Cairns. (Id.) The Internal Affairs Bureau further recommended that no disciplinary action be taken against Officer Sheldon or Officer Cairns. (Id.)

In sum, the City of Dayton has presented evidence and law showing that it is not liable for Plaintiffs' civil rights claim. Further, the Plaintiffs have not presented evidence to create a genuine issue of material fact regarding any of their claims against the City of Dayton. Therefore, there are no genuine issues of material fact and the City of Dayton is entitled to judgment as a matter of law on Plaintiffs' civil rights claims.

<u>State Law Claims Against All Defendants</u>

The Defendants argue that the Plaintiffs are unable to establish the elements of their state-law claims and are unable to present evidence sufficient to overcome the Defendants' immunity from suit on these claims. As above, the Plaintiffs have not responded.

Regarding Plaintiffs' state tort claims against the City of Dayton, Ohio Rev. Code § 2744.02(A) provides general immunity for political subdivisions, such as municipalities, in connection with proprietary and governmental functions. Ohio Rev. Code § 2744.02(A)(1).

Relative here, the provision of a police force is a governmental function. Ohio Rev. Code §
2744.02(C)(2).

Certain exceptions to liability for governmental functions are listed in Ohio Rev. Code §
2744.02(B). *McCloud v. Nimmer*, 595 N.E.2d 492, 536-37 (Ohio Ct. App. 1991) However, none
of these exceptions apply here and the Plaintiffs have not argued that any of them do apply here.
Therefore, the City of Dayton is entitled to immunity from Plaintiffs' state law claims.

Regarding Plaintiffs' state tort claims against Officers Sheldon and Cairns, Ohio Rev.
Code § 2744.03 provides a police officer with immunity for acts committed while carrying out
his or her official duties. *Cook v. City of Cincinnati*, 658 N.E.2d 814, 820 (Ohio Ct. App. 1995),
*cert. denied*, 517 U.S. 1120 (1996). The police officer is immune unless one of the following
exceptions applies:

1. The police officer's acts or omissions were manifestly outside the scope of the
   police officer's employment or official responsibilities;

2. The police officer's acts or omissions were with malicious purpose, in bad faith or
   in a wanton and reckless manner; or

3. Liability is expressly imposed upon the police officer by a section of the Ohio
   Revised Code.

Finally, the court is to begin with a presumption of immunity. *Id.* at 821.

In this case, there is no evidence that either Officer Sheldon or Officer Cairns acted
outside the scope of his employment. Further, there is no evidence that either Officer acted with
malicious purpose, bad faith, or in a wanton or reckless manner or that liability is expressly
imposed on Officers Sheldon and Cairns by a section of the Ohio Revised Code.

The Rule 56 evidence indicates that Fields advanced toward Officer Cairns wielding a
large, fixed-blade knife. Fields ignored numerous orders from Officers Sheldon and Cairns to

-13-

drop his weapon and continued to advance towards Officer Cairns. Fields was shot when he was six or seven feet away from Officer Cairns.

There is evidence that Officers Sheldon and Cairns shot Fields while carrying out official duties. Further, the Plaintiffs have presented no evidence showing that any of the exceptions to qualified immunity apply in this case. Therefore, Officers Sheldon and Cairns are entitled to qualified immunity from Plaintiffs state law tort claims.

The Plaintiffs also bring a state law claim for loss of consortium. However, a claim for loss of consortium is a derivative action. *Messmore v. Monarch Machine Tool Co.*, 463 N.E.2d 108, 110 (Ohio Ct. App. 1983). A derivative action is dependent upon the existence of a primary cause of action and can be maintained only so long as the primary action continues. *Id.* Where the primary cause of action fails to survive a motion for summary judgment, the derivative cause of action for loss of consortium must also fail. *Lynn v. Allied Corp.*, 536 N.E.2d 25, 36 (Ohio Ct. App. 1987)

In this case, none of the Plaintiffs' primary causes of action have survived Defendants' Motion for Summary Judgment. Therefore, Plaintiffs loss-of-consortium claim must also fail.

<u>Punitive Damages</u>

Plaintiffs allege that they are entitled to punitive damages on their civil rights claim. However, Plaintiffs civil rights claim has not survived summary judgment. Therefore, Plaintiffs claim for punitive damages must fail.[1]

## CONCLUSION

---

[1]Whether or not the underlying claim fails, municipalities like the City of Dayton are not liable for punitive damages for civil rights claims. *City of Newport News v. Facts Concerts, Inc.*, 453 U.S. 247 (1981).

-14-

Officers Sheldon and Cairns are entitled to qualified immunity from Plaintiffs' civil rights claim because the Defendants have presented evidence that they did not violate Fields's civil rights and the Defendants have presented no evidence to the contrary. Further, the Defendants have presented evidence of the existence of a constitutional policy and adequate training and the Plaintiffs have presented no evidence of an underlying civil rights violation or the existence of a facially unconstitutional official policy or edict or that the City of Dayton failed to properly train Officer Sheldon or Officer Cairns.

All of the Defendants are entitled to immunity from Plaintiffs' state law tort claims. Further, Plaintiffs' derivative loss-of-consortium claim fails because the underlying claims have failed. Finally, because all of Plaintiffs underlying claims have failed, their punitive-damage claim also fails.

There are no genuine issues of material fact and the Defendants are entitled to judgment as a matter of law. Defendants Motion for Summary Judgment (doc. # 10) is GRANTED. The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

**DONE** and **ORDERED** in Dayton, Ohio, this Twenty-Third day of July, 2007.

**s/Thomas M. Rose**

_____
THOMAS M. ROSE
UNITED STATED DISTRICT JUDGE

Copies furnished to:

Counsel of Record

-15-